UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA D.,

           Plaintiff,

         v.                                     **DECISION AND ORDER**

                                                               20-CV-7109S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Barbara D.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her applications with the Social Security Administration on July 23, 2018. Plaintiff alleged disability originally beginning June 1, 2018, but amended to July 23, 2018 (Docket No. 14, Pl. Memo. at 1), due to post-traumatic stress disorder (or "PTSD"), chronic narcotic dependence, vertigo, major depressive disorder, generalized anxiety disorder, and panic disorder. Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On November 7, 2019, ALJ Bruce Fein held a video hearing at which Plaintiff—represented by counsel—appeared and testified; no vocational expert testified. (R.² at 31-58, 15.) At the time of the hearing, Plaintiff was 46 years old with a high school education (R. at 26). The ALJ found that the record contained insufficient vocational information (R. at 25). In the State Agency evaluation of Plaintiff's application, they observed that Plaintiff had past work as a certified nursing assistant (or "CNA"), laundry aide, cashier/stocking, and kitchen aide (R. at 71-72; see at 183).

4. The ALJ considered the case *de novo* and, on December 26, 2019, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.³ (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 14, 15.) Plaintiff filed a response on September 20, 2021 (Docket No. 16), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

²Citations to the underlying administrative record are designated as "R."

³The ALJ's December 26, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

        9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

        10.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C.

4

§ 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.  The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the originally claimed onset date of June 1, 2018.  (R. at 17.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  post-traumatic stress disorder, chronic narcotic dependence, vertigo, major depressive disorder, generalized anxiety disorder, and panic disorder (R. at 17).  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.  Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform full range of work at all levels.  The ALJ found that Plaintiff had nonexertional limitations that she could work at low-stress job, requiring only occasional decision-making, only occasional changes in the work setting, and only occasional judgment on the job; never climb ropes/ladders/scaffold; and should avoid concentrated exposure to unprotected heights/hazardous machinery and operational control of moving machinery.  (R. at 20-21.)

13.  At Step Four, the ALJ found the record insufficient to determine whether Plaintiff could perform any past relevant work, proceeding to Step Five, see 20 C.F.R. §§ 404.1520(h), 416.920(h).  (R. at 25.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 26.)  The ALJ noted that her ability to perform work at all exertional levels has been compromised by nonexertional mental, postural, and environmental limitations.  The ALJ

then evaluated the degree of erosion of her ability at all levels due to these nonexertional limitations, without posing hypotheticals to a vocational expert. The ALJ found that Plaintiff's mental limitations still allowed Plaintiff the ability to work at a low-stress job (that is, on requiring only occasional decision making, only occasional changes in the work setting, and only occasional judgment on the job). The ALJ concluded that Plaintiff

> "continues to possess the ability, on a sustained basis, to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. As a result, [Plaintiff] maintains the capacity to meet the three basic mental demands that are required for the performance of competitive and remunerative unskilled work (SSR 85-15)."

(R. at 26.) The ALJ concluded that the nonexertional mental limitations "have little or no effect on the occupational base of unskilled work at all exertional levels" (R. at 26). The ALJ then found that her postural and environmental limitations had little to no impact on her ability to perform unskilled work at all exertional levels (R. at 26-27.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 27.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to properly assess the extent to which her anxiety interfered with her ability to stay on task and maintain attendance, the ALJ did not assess properly the medical opinions evidence and failed to consult with a vocational expert. For the reasons that follow, this argument is unavailing.

15. Plaintiff filed her claim after March 27, 2017, hence the new rules for evaluating medical opinions apply, 20 C.F.R. §§ 404.1520c, 416.920c. The ALJ need not articulate how each medical opinion is considered, id. §§ 404.1520c(b)(1), 416.920c(b)(1). Under the post-March 2017 standard, the more consistent the medical

6

opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the opinion will be, id. §§ 404.1520c(c)(2), 416.920c(b)(1).

16.   First, Plaintiff argues that the ALJ failed to assess how anxiety interfered with her ability to be on task or maintain attendance at work, disregarding consultative examiner Dr. Amanda Slowik, Ph.D., and her treating sources, Dr. Stephen Spaulding, Dr. Anasuya Raman, and counselor Marc McDowell, LMHC (Docket No. 14, Pl. Memo. at 8-10, 10-17, 17-20; R. at 437, 19, 24-25).  She also argues the ALJ improperly assessed these opinions as well as failing to assess Dr. Patricia McIlvride's opinion (Docket No. 14, Pl. Memo. at 20-21) and relying too much on the opinion of State agency examiner, Dr. M. Marks (id. at 21-24).

17.   Dr. Slowik examined Plaintiff on October 9, 2018 (R. at 437, 22).  Plaintiff reported to Dr. Slowik that she had panic attacks without an apparent trigger, that occurred daily and consisted of hot flashes, crying, trembling, and a need to leave the situation (R. at 437, 22).  Plaintiff last worked as a CNA until leaving due to panic attacks on the job (R. at 437).  Plaintiff also reported problems with her short-term memory and concentration (R. at 438, 22).  Dr. Slowik found that Plaintiff's attention and concentration were mildly impaired and her ability to sustain concentration was mildly limited (R. at 439, 440, 19, 22).  Her "ability to sustain an ordinary routine and regulate emotions," however, was "moderately to markedly limited" with difficulties caused by anxiety (R. at 440, 24; Docket No. 14, Pl. Memo. at 8).  Dr. Slowik opined that the expected duration of the impairment was one year (R. at 440).  The doctor then found this evaluation is consistent with psychiatric issues, "which may significantly interfere with the claimant's ability to function on a daily basis" (R. at 440).

18. The ALJ found Dr. Slowik's opinion "to have some persuasive value" (R. at 24). The ALJ addressed Dr. Slowik's mental functioning concerns by limiting Plaintiff to "jobs performed in a low-stress work environment" (R. at 24, 21).

19. In Reply, Plaintiff argues that the ALJ makes "an evidentiary leap" that anxiety can be cured or addressed by a low-stress job (Docket No. 16, Pl. Reply Memo. at 1-2). There was no apparent trigger noted for Plaintiff's anxiety, hence a low-stress work may not alleviate it (id. at 2, quoting SSR 85-15).

20. Plaintiff equates sustaining an ordinary routine with maintaining regular attendance and staying on task (Docket No. 14, Pl. Memo. at 8 n.1). Plaintiff asserts that she was at the more severe marked limitation. She claims the ALJ did not include any limitation for staying on task or attendance despite this more severe limitation. (Id. at 8.)

21. The ALJ noted that Dr. Slowik found Plaintiff's attention and concentration were only mildly impaired and Plaintiff was "otherwise within normal limits" (R. at 19, 22-23, 439).

22. Resting upon the recommendation for a low-stress environment (R. at 20-21, 24; Docket No. 15, Def. Memo. at 12), Defendant argues the moderate-to-marked limitation being at odds with the RFC was meritless (Docket No. 15, Def. Memo. at 12-13). Defendant posits that the ALJ reasonably interpreted Dr. Slowik's opinion as permitting low-stress work and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld," McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) (id. at 13).

23. Dr. Slowik did not mention Plaintiff's attendance or ability to stay on task in her opinion; the only reference is Plaintiff's own statement of having daily panic attacks without a known trigger (R. at 437).

24. The doctor's opinion may be subject to interpretation, here limit work to low-stress jobs to mitigate Plaintiff's anxiety attacks or factor in attendance and staying on task given the daily potential for a panic attack. With this evidence susceptible to multiple rational interpretations, this Court is bound to the Commissioner's conclusion, see McIntyre, supra, 758 F.3d at 149.

25. Next, Plaintiff objects to the ALJ's consideration of treating and consultative opinions, all on determining the effects of her anxiety on her ability to remain on task and her attendance.

26. Dr. Stephen Spaulding treated Plaintiff while she worked as a CNA until her termination due to panic attacks. On September 23, 2019, noted Plaintiff had extreme limitation (defined as major limitation in this area, "there is no or very little useful ability to function in this area") for maintaining regular attendance without interruption from psychological based symptom (R. at 593, 25; Docket No. 14, Pl. Memo. at 10). Dr. Spaulding noted marked absenteeism for three or more days per month (R. at 594, 25). Plaintiff reporting that she has not worked due to panic attacks if work were attempted. Plaintiff was not working when Dr. Spaulding reported and thus was unable to report on Plaintiff's ability to perform within a schedule, respond appropriately to ordinary stressors, or how off task she would be (R. at 593). Dr. Spaulding did observe that Plaintiff suffered panic attacks when stressed (R. at 558, 561; Docket No. 15, Def. Memo. at 10).

27.   From Dr. Spaulding's treatment notes, Plaintiff stated on November 9, 2015, that she lost her job when she became anxious at work while trying to prevent clients from injuring themselves at her job at a medical facility (R. at 312).

28.   On May 31, 2018, Plaintiff reported to Dr. Spaulding that she suffered a panic attack before going to work, noting unresolved stress at home led to frequent absences from work and the suggestion she might be fired (R. at 361).  On June 11, 2018, Dr. Spaulding observed that Plaintiff was having more panic attacks.  Her husband believed that she could not work because of the potential for an attack while there as she was "even having panic attacks at home."  (R. at 364.)  On July 2, 2018, Plaintiff was having more panic attacks and becoming panicky thinking about returning to work and she is concerned she could not start (much less complete) a workday (R. at 370).  On July 19, 2018, Plaintiff complains she still has panic attacks and cannot approach her job without an attack.  She is frustrated and claims the only place she had panic attacks was at work (R. at 373).  Dr. Spaulding advised Plaintiff to take a leave of absence (R. at 374).

29.   On September 18, 2018, Plaintiff reported to Dr. Spaulding that, while her stress reduced due to not working, she still had panic attacks "out of the blue," but less frequently than before (R. at 376).  Dr. Spaulding observed that her mood was good and affect appropriate (R. at 376).

30.   On March 26, 2019, Dr. Spaulding noted that Plaintiff "still had panic attacks out of the blue at times, 2-3[/wk.], a slight increase" (R. at 558), occurring when Plaintiff was stressed, rushed, or due to caffeine (R. at 558).  On April 30, 2019, the doctor observed that Plaintiff had less frequent panic attacks but when they occurred, they were

due to Plaintiff being stressed, rushed, or having ingested caffeine (R. at 561).  Plaintiff claims she experienced "too much anxiety and panic attacks to return to work" (R. at 565).

31. On August 5, 2019, Plaintiff still had daily panic attacks, occurring most when she is stressed (R. at 573).  The doctor noted that her husband was "still a great source of stress," and her abusive marriages and PTSD (R. at 573).  Dr. Spaulding assessed Plaintiff with panic attack where she did not feel "she could make it through a workday due to the anxiety and panic" (R. at 577).

32. The ALJ found Dr. Spaulding to be unpersuasive, arguing that doctor's treating notes did not provide support for the opinion (R. at 25, 21, 273-436, 551-90).  The ALJ concludes that Dr. Spaulding's absence opinion was "wholly conjectural" and not based on any documentation or evaluation (R. at 25).  The ALJ then found that Dr. Spaulding's opinion is inconsistent with those of Drs. Marks and Slowik (R. at 25).

33. Plaintiff argues that Dr. Spaulding's opinions were not inconsistent with Dr. Slowik's opinion that the ALJ relied upon (Docket No. 14, Pl. Memo. at 10).  She points to the record (stated above) from Dr. Spaulding's treatment notes on her ongoing anxiety (id. at 11-12).  She rejects the ALJ's conclusion that Dr. Spaulding's opinion was conjectural because the treatment notes reflect Plaintiff losing jobs and not retaining jobs because of her panic attack (id. at 15-16).

34. Defendant argues that Dr. Spaulding made unremarkable objective findings that the ALJ could properly conclude that the doctor's absentee opinion was speculative (Docket No. 15, Def. Memo. at 16-17).  Sorting though these opinions and other opinions in the record, Defendant concludes that "the ALJ reasonably determined that the opinions of Dr. Marks and Dr. Slowik were more persuasive that the opinion of Dr. Spaulding and

the joint opinion of Dr. Raman and Mr. [McDowell], as the former opinions were more supported by, and consistent with, the evidence in the record, such as plaintiff's treatment notes, showing routine treatment and normal findings, and her ability to do all of her daily activities" (id. at 17).

35. From this record, Plaintiff's stress appears to originate from Plaintiff's family and previous abuse but is manifest at work or the thought of going to work. There is no source attributed to her panic attacks. Plaintiff still had panic attacks after she stopped working. Despite these attacks, Dr. Spaulding's psychiatric evaluation of Plaintiff otherwise were normal.

36. Dr. Anasuya Raman and Marc McDowell opined that Plaintiff would be off-task 16-20% of the workday and absent three or more days a month (R. at 597-98, 25). In their September 25, 2019, assessment, Dr. Raman and Mr. McDowell noted that Plaintiff had moderate limitation in maintaining regular attendance without interruptions form psychological based symptom (R. at 597) but marked limitations for performing activities within a schedule and her ability to respond appropriately to ordinary stressors in a work setting with simple tasks (R. at 597). They found that Plaintiff would have a moderate limitation for being off task 16-21% of the time (R. at 597) and a marked limitation for being absent three days or more a month (R. at 598).

37. The ALJ found this assessment inconsistent with the opinions of Dr. Marks (R. at 25, 61, 74) and Dr. Slowik (R. at 25, 437). The ALJ also concluded that Dr. Raman and Mr. McDowell's treatment notes failed to support their opinion (R. at 25, 238-71, 455-542). The ALJ then found these professionals did not conduct testing of Plaintiff's attention and concentration to determine to what degree she would be off task (R. at 25).

The ALJ also found their absentee assessment was purely speculative and not based on observation or evaluation (R. at 25).

38.  Dr. Patricia McIlvride of the Schuyler County Mental Health Clinic conducted a psychological evaluation of Plaintiff including objective testing on December 18, 2018 (R. at 543 (Ex. 7F), 23).  Dr. McIlvride found Plaintiff suffered from anxiety from abuses in her childhood and first marriage and distress therefrom not resolved and compounded by concern from the illness of her second husband (R. at 544, 545, 548; see Docket No. 14, Pl. Memo. at 21).  The doctor made no assessment regarding Plaintiff's ability to work despite this anxiety.

39.  Plaintiff charges that the ALJ committed legal error by not assessing Dr. McIlvride's opinion (Docket No. 14, Pl. Memo. at 20-21).

40.  The ALJ, in fact, did assess Dr. McIlvride's opinion, concluding that the mental health exam was within normal limits (R at 23, citing Ex. 7F).

41.  State agency reviewer Dr. Marks in November 2018 found that Plaintiff had moderate limitation in maintain attention and concentration for extended periods and the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods (R. at 69, 82, 24).  Plaintiff is mildly impaired in her attention and concentration (R. at 70, 83).  Dr. Marks concluded, however, that Plaintiff had sustain concentration and persistence that she was able to complete work related tasks on a consistent basis (R. at 71, 84).  Dr. Marks then observed that as for her ability to adapt, Plaintiff "had some difficulty coping in stressful circumstances," but "there is no

substantial limitation in the ability to adapt to customary changes in an ordinary work" (R. at 71, 84).

42.	The ALJ found Dr. Marks' opinions to be persuasive from the doctor's review of the relevant medical record and opinions and supported by the doctor's findings (R. at 24, 25).

43.	Plaintiff argues Dr. Marks never examined her and merely reviewed her file to form his opinion (Docket No. 14, Pl. Memo. at 21-24).  She counters that Dr. Marks had the outlier opinion from the other medical sources id. at 23-24).

44.	Dr. Marks noted limitations cited by Plaintiff but then concluded that Plaintiff still could work despite these limitations (R. at 69-70, 70-71).

45.	The ALJ did assess the medical opinions and evidence how Plaintiff's panic attacks and anxiety interfered with her ability to remain on task and the potential for absenteeism as a result.  Considering these opinions together, the only opinions finding Plaintiff would be off task or prolonged absences is Dr. Spaulding (R. at 543), Dr. Raman and Mr. McDowell (R. at 597-98) where other opinions (including from Drs. Marks and Slowik) discuss Plaintiff's panic attacks but without concluding loss of work for being off task or absences.  These opinions are consistent, but none make the connection between Plaintiff's panic attacks and her inability to work.

46.	There is substantial evidence support the ALJ's conclusion that Plaintiff suffers from anxiety.

47.	The ALJ properly assessed Plaintiff's ability to stay on task and maintain attendance while also properly assessing the opinion evidence of record.

48. Plaintiff's Motion (Docket No. 14) for Judgment on the Pleadings on the grounds of her anxiety and the medical opinion on that condition is denied.

49. The ALJ did not use a vocational expert to assess the impact of Plaintiff's nonexertional limitations on her ability to perform at any exertional level. Plaintiff contends that the ALJ erred in relying upon the Medical-Vocational Rule grids where more than a negligible nonexertional impairment existed (Docket No. 14, Pl. Memo at 24). She claims significant limitations from her nonexertional limitations in staying on task and maintaining attendance caused by her anxiety and panic attacks (id. at 24-25). She notes that usually a vocational expert would testify when a claimant is off task at work more than 15% of the time (id. at 25).

50. Defendant argues that the ALJ is not required to obtain the opinion of a vocational expert and may rely upon the Medical-Vocational Rules in determining whether a claimant could perform any job in the national economy (Docket No. 15, Def. Memo. at 22).

51. "If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert," Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation and citation omitted)). The "'mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines,'" Zabala, supra, 595 F.3d at 410-11 (quoting Bapp, supra, 802 F.2d at 605). "A nonexertional impairment 'significantly limits'" a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of

15

a meaningful employment opportunity.'" Zabala, supra, 595 F.3d at 411 (quoting Bapp, supra, 802 F.2d at 605–06).

52. The ALJ first found that Plaintiff's nonexertional mental, postural, and environmental limitations compromised her ability to perform work at all exertional levels. He next considered each nonexertional limitation and their individual impact on Plaintiff's ability to work, concluding that her mental limitations had "little to no effect;" her postural limitations had very little impact; and her environmental limitations did not substantially affect her ability to work at any exertional level (R. at 26-27).

53. At Step Five, the evidentiary burden shifts to the Commissioner. Defendant has established that Plaintiff's nonexertional limit (specifically her mental limitations) did not result in an additional loss of work capacity to require consultation with an expert, see Zabala, supra, 595 F.3d at 411. Opinion in this record showed that Plaintiff was not off task or absent to a significant degree as to affect her employment such as to require the ALJ obtain an opinion from a vocational expert. Again, Dr. Marks found that, while Plaintiff had difficulty coping with stressful situations, she had no substantial limitation in her ability to work in an ordinary environment (R. at 71, 84, 25).

54. This Court also must defer to the Commissioner's findings, see Biestek v. Berryhill, 587 U.S. ___, 139 S.Ct. 1148, 1157, 203 L.Ed.2d 504 (2019) (Docket No. 15, Def. Memo. at 24).

55. Thus, Plaintiff's objection to the absence of a vocational expert's opinion is rejected and her Motion for Judgment on the Pleadings (Docket No. 14) for relief on this ground is denied.

56. Therefore, Plaintiff's Motion for Judgment on the Pleadings (id.) is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:   March 28, 2022
         Buffalo, New York


                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge